IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| BEVERLY GALARZA and STEVEN GALARZA, <br><br> Plaintiffs, <br><br> vs. <br><br> QUAM PROPERTIES HAWAII, INC., *et al.*, <br><br> Defendants. | Civil No. 23-00612 MWJS-WRP <br><br> ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM AND DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO TIMELY SERVE |

**<u>INTRODUCTION</u>**

Plaintiffs Beverly Galarza and her son, Steven Galarza, who has disabilities, are part-time residents of a condominium in Lahaina, Hawaiʻi.  In this Fair Housing Act suit, Plaintiffs allege that Defendants retaliated against them after Ms. Galarza assisted with a U.S. Department of Justice (DOJ) investigation into her condominium complex, as well as a neighboring complex, for allegedly failing to comply with accessibility laws.

Defendants seek dismissal on two grounds:  Rule 12(b)(6) failure to state a claim for relief and Rule 12(b)(5) failure to timely serve.  For the reasons explained below, the Court DISMISSES the First Amended Complaint (FAC) to the extent that it fails to state a claim for retaliation.  But the Court declines to

dismiss the remaining defendants based on untimely service.  The extent to which
the FAC survives is laid out at the end of this Order.

## BACKGROUND

### A.    The First Amended Complaint's Factual Allegations

As alleged in the FAC, Plaintiffs are part-time residents of the Napilihau
Villages condominium complex in Lahaina, Hawai'i.  ECF No. 29, at PageID.160.
Napilihau Villages neighbors another condominium complex, the Napili Villas.  *Id.*
Within the Napili Villas complex area is a fenced-in water basement catchment
area, which is open to the public.  *Id.*  Historically, Plaintiffs and other members of
the public brought their dogs to the basin to let them run off-leash.  *Id.*

Both condominium complexes—Plaintiffs' own and the neighboring Napili
Villas—allegedly suffer from serious accessibility deficiencies.  *Id.* at PageID.160-
61.  According to Plaintiffs, the deficiencies are so severe that the U.S. Department
of Housing and Urban Development (HUD) and DOJ took interest.  *Id.* at
PageID.161.  Plaintiffs assisted the agencies with their investigations, including by
participating in interviews and recruiting other residents to speak with DOJ and to
permit inspection of their units.  *Id.*  The investigations ultimately culminated in a
lawsuit brought by DOJ, *United States v. Albert C. Kobayashi, Inc.*, CV No. 19-
00531 LEK-RT (D. Haw.).  ECF No. 29, at PageID.161.

Plaintiffs allege that their advocacy engendered retaliation.  Most notably, after the DOJ suit was filed and Plaintiffs' involvement in it was disclosed, the Napili Villas Homeowner's Association (HOA) stopped letting dogs run off-leash at its catchment basin.  *Id.* at PageID.162.  Several of the individual defendants, who are each employed by the HOA's property management company, allegedly helped carry out this policy change.  *Id.* at PageID.169-70.

Plaintiffs say this decision targeted them—they claim that the change was made specifically because they often took their dog to the basin.  *Id.* at PageID.168.  Other residents, too, allegedly believed that Plaintiffs were to blame for the policy restricting use of the basin, and began treating Plaintiffs with hostility.  *Id.* at PageID.169-73.  Ms. Galarza petitioned the HOA to reverse the policy, but she was instructed to cease her petition.  *Id.* at PageID.169-70.

**B.    This Lawsuit and Service of Process**

Plaintiffs brought this suit in December 2023 for unlawful retaliation under the Fair Housing Act.  They seek damages and injunctive relief, including the reinstatement of the dog off-leash policy.

Seven defendants are implicated, each of whom are involved with one (or both) of the condominiums.  Defendant Quam Properties Hawaii, Inc. (Quam Properties) manages the properties for both Napilihau Villages and Napili Villas. Defendant Rod Quam owns Quam Properties.  And several of the individual

3

defendants are current or former employees of Quam Properties:  Lysa Tracy, a

former supervisor; Michael Deatrick, a former project manager; and Jim Cribben, a

current site manager.  Plaintiffs also sue Thomas Vanderlaan, the Napilihau

Villages president.  Finally, they sue the neighboring Napili Villas HOA.

Plaintiffs' original complaint was filed on December 26, 2023.  Although the

Federal Rules of Civil Procedure call for service of the defendants within ninety

days, *see* Fed. R. Civ. P. 4(m)—placing the deadline for service in March 2024—

no service was effectuated until April 2024 and beyond.[1]  After Defendants filed a

motion to dismiss the original complaint, *see* ECF No. 21, Plaintiffs filed their

FAC on May 15, 2024, *see* ECF No. 29.

### C.    Defendants' Motions to Dismiss

All but one of the defendants[2]—Vanderlaan—now move to dismiss the

FAC.  *See* ECF No. 33.  They seek dismissal on two grounds:  (1) dismissal in part

under Rule 12(b)(6) for failure to state a claim for relief, and (2) dismissal of the

remaining defendants under Rule 12(b)(5) for failure to timely serve.

Plaintiffs oppose in full.  With respect to the untimeliness of service,

Plaintiffs' counsel explains that a member of their legal team, who typically

---

[1]     As of the date this Order, one defendant, Deatrick, still has yet to be served.

[2]     The movant defendants are referred to in this Order as simply "Defendants"
for ease of reading.

4

handles service of process, was suffering from health issues; counsel who filled in had an extraordinarily busy calendar; and pro hac vice counsel had agreed to handle the matter for local counsel, who also maintains a busy schedule. *See* ECF No. 41-1 (Decl. of Mark Whitburn).

The Court elects to decide the motions without a hearing pursuant to Local Rule 7.1(c).

## **DISCUSSION**

### A.    **Plaintiff Mr. Galarza and Defendants Quam, Tracy, and Deatrick Are Dismissed for Failure to State a Claim for Relief**

Defendants' 12(b)(6) motion is two-part.  They seek dismissal of one of the plaintiffs, Mr. Galarza.  And they seek dismissal of three defendants, Quam, Tracy, and Deatrick.  The Court agrees that the FAC fails to state a viable retaliation claim on behalf of Mr. Galarza or against Quam, Tracy, or Deatrick, and so it is dismissed to that extent.

1.  Under Rule 8, a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To show an entitlement to relief, however, it is not enough for a complaint to allege "labels and conclusions."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, to survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

5

This means that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  And while "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable," *id.* at 556, the complaint must include sufficient "factual enhancement" to cross "the line between possibility and plausibility," *id.* at 557.  *See also Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014).

To determine whether a complaint's allegations are sufficient, the Court proceeds in two steps.  *Eclectic Props*, 751 F.3d at 995-96.  First, legal conclusions couched as factual allegations are disregarded.  *Id.* at 996; *see also Iqbal*, 556 U.S. at 678.  Second, assuming the veracity of well-pleaded allegations, the Court "determine[s] whether they plausibly give rise to an entitlement to relief," *Eclectic Props*, 751 F.3d at 996 (quoting *Iqbal*, 556 U.S. at 679)—in other words, whether the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678.

2.  The Fair Housing Act makes it unlawful "to coerce, intimidate, threaten, or interfere with" any person's exercise of their rights under the act.  42 U.S.C. § 3617.  To state a prima facie claim for housing retaliation, a plaintiff must allege that (1) they engaged in a protected activity, (2) the defendant subjected them to an

adverse action, and (3) a causal link exists between the protected activity and the adverse action. *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001).

As to Plaintiff Mr. Galarza, Defendants contend that the FAC does not allege either that he engaged in any protected activity, or that Defendants engaged in any retaliatory conduct against him. The Court agrees that the FAC does not state a claim by Mr. Galarza because, even accepting its allegations as true, the only protected activities were taken solely by Ms. Galarza. *See, e.g.*, ECF No. 29, at PageID.166 (¶ 30) ("HUD . . . agents interviewed Plaintiff Beverly Galarza and sought her assistance . . . . Ms. Galarza assisted both agencies as requested."); *id.* at PageID.167 (¶ 31) ("Beverly Galarza appropriately spoke with other residents to help gauge the extent of the accessibility problems and assisted in determining whether there were volunteers that might assist the DOJ in assessing the situation."); *id.* at PageID.173 (¶ 50) ("Ms. Galarza's actions in assisting the DOJ in investigating . . . constituted protected activities under 42 U.S.C. § 3617."). Nor does the FAC allege that Defendants retaliated against Mr. Galarza because they *perceived* him as having engaged in any protected activities. Instead, the FAC merely alleges that Defendants retaliated against Mr. Galarza's mother for *her* advocacy and that Mr. Galarza was also harmed as a result.

In opposition, Plaintiffs contend that Mr. Galarza is a proper plaintiff because he has statutory standing to bring suit. The FAC, Plaintiffs point out,

alleges that Mr. Galarza suffered the injury of fear of retaliation and harassment. ECF No. 41, at PageID.302. These are sufficiently concrete injuries to afford Mr. Galarza constitutional Article III standing. And Plaintiffs contend that they necessarily suffice for statutory standing, too, because "[t]he sole requirement for standing to sue under the FHA is the Article III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered a distinct and palpable injury." *Id.* at PageID.301 (quoting *Walker*, 272 F.3d at 1123).

Plaintiffs may well be correct that Mr. Galarza has statutory standing—or, more precisely, that the statute permits a person in his position to bring suit. But it is a separate question whether Mr. Galarza has alleged sufficient facts to state a claim for relief under the statute. Put differently, standing alone is necessary but not sufficient to state a claim. And here, the FAC has failed to allege that Mr. Galarza engaged in any protected activity, which is a requirement to state a retaliation claim. Accordingly, the Court DISMISSES Plaintiff Mr. Galarza from this suit.

3. Defendants further argue that even with respect to Plaintiff Ms. Galarza, the FAC fails to state a claim for relief against Defendants Quam, Tracy, and Deatrick.[3] As noted, the FAC asserts that Ms. Galarza engaged in the protected

---

[3] The Court does not consider Defendants' 12(b)(6) argument regarding the HOA, which was raised for the first time in their reply brief. *See* ECF No. 42, at

activity of assisting with the DOJ investigation into and the subsequent lawsuit against the condominium complexes for allegedly failing to comply with disability laws.  Defendants accordingly focus their argument on the second and third elements of retaliation, adverse action and causation.

For purposes of the Fair Housing Act, an adverse action "must be in the form of 'coerc[ion], intimidat[ion], threat[s], or interfere[nce].'"  *Walker*, 272 F.3d at 1128 (alterations in original) (quoting 42 U.S.C. § 3617).  There are no allegations that Quam, Tracy, or Deatrick threatened or intimidated Ms. Galarza.  Although the FAC alleges some harassment by other Defendants, the only allegations of harassment by Quam, Tracy, and Deatrick are too conclusory to be entitled to a presumption of truth.  *See, e.g.*, ECF No. 29, at PageID.166 (¶ 29) ("Defendants Rod Quam, Lysa Tracy, [and] Michael Deatrick . . . all participated in this harassment at varying points."); *id.* ("Rod Quam directed these instances of harassment . . . ."); *id.* at PageID.169 (¶ 37) ("[T]he Quam Defendants took it upon themselves to cut this [dog leash] program short through harassment . . . .").

The FAC more specifically alleges that, as retaliation for Ms. Galarza's actions, various Defendants participated in carrying out the dog-leash policy change at the catchment basin; in particular, Quam gave an instruction to end the

---

PageID.343-44; *see also* LR7.2 ("Any argument raised for the first time in the reply shall be disregarded.").

off-leash policy, Deatrick locked the gates to the catchment basin in an open

position so that dogs would escape if off-leash, and Tracy instructed Ms. Galarza

to cease petitioning the HOA to reverse the off-leash policy.  *Id.* at PageID.169-

170 (¶ 37).  But that involvement in the policy change—and, indeed, the policy

change itself—does not amount to an adverse action under the Fair Housing Act.

*See, e.g.*, *Weatherford v. Nev. Rural Hous. Auth.*, 946 F. Supp. 2d 1101, 1114 (D.

Nev. 2013) (defendants' actions in asking plaintiff to sign a settlement agreement

and temporarily suspending her housing voucher did not rise to the level of adverse

action required for retaliation claim), *aff'd*, 588 F. App'x 709 (9th Cir. 2014);

*Morgan v. Brittany Woods Homeowner's Ass'n*, No. 18-CV-291, 2019 WL

2114255, at *4-5 (E.D. N.C. May 14, 2019) (association's change of community

trash and recycling policy did not constitute adverse housing action).  And because

it does not identify a single action that is arguably adverse under the Fair Housing

Act, the FAC fails to state a claim.

Nor does the FAC plausibly allege a causal link between the actions of

Quam, Tracy, or Deatrick and Ms. Galarza's protected activities.  "Proximity in

time between the protected activity and the allegedly retaliatory decision can

constitute some evidence of a retaliatory motive or of a causal link."  *Donaghey v.*

*Moorpark Bellingham Homeowners Ass'n*, No. 22-cv-08524, 2023 WL 9318509,

at *5 (C.D. Cal. Nov. 29, 2023) (cleaned up).  And the FAC alleges that the dog

10

leash policy changed after Plaintiffs' names were disclosed in the DOJ lawsuit. But the FAC does not allege the specific dates of each Defendants' conduct, so the Court cannot ascertain the amount of time between the protected activity and the allegedly retaliatory conduct. *See Slaughter v. Valley View I LLP*, No. C23-1360, 2023 WL 6461058, at *2 (W.D. Wash. Oct. 4, 2023) (dismissing housing retaliation claim for lack of causation because plaintiff failed to specify the dates on which she and the defendants took the relevant actions). And no other allegations sufficiently demonstrate any causal links. While there is a conclusory suggestion that the dog leash policy was enforced more strictly against Plaintiffs, *see* ECF No. 29, at PageID.168 (¶ 35) ("Although Defendants did not always enforce their new 'policy,' they lost no opportunity to enforce it against Plaintiffs . . . ."), there are no specific factual allegations to back up that point; indeed, according to the FAC, other residents complained about the new policy, too, *id.* at PageID.169 (¶ 37) ("Many residents were negatively impacted by the retaliatory change in policies . . . .").

Because the FAC does not plausibly allege the elements of an adverse action or causation, the Court DISMISSES Defendants Quam, Tracy, and Deatrick.

4. Defendants request that the 12(b)(6) dismissals be with prejudice. But because Plaintiff could possibly cure some of the FAC's deficiencies, the 12(b)(6)

11

dismissals are without prejudice at this time.  *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

### B.    The Court Declines to Dismiss the Remaining Defendants for Untimely Service of Process

To dispose of the remaining moving Defendants—Cribben, Quam Properties, and the HOA—Defendants also move to dismiss under 12(b)(5) for untimely service of process.  Fed. R. Civ. P. 12(b)(5).  The Court declines to dismiss the complaint against the remaining defendants for failure to timely serve.

Rule 4 of the Federal Rules of Civil Procedure governs service of process. Under subsection (m), a defendant must be served within ninety days of a complaint's filing.  And if they are not, the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).

While the rule appears to mandate dismissal when service is untimely—it says that the court "*must* dismiss the action," *id.* (emphasis added)—the rule nonetheless allows for an extension of the time for service where a plaintiff "shows good cause for the failure," *id.*  Moreover, even in the absence of good cause, district courts are vested with the discretion to extend the time for service, including retroactively.  *Pitts v. Baumgartner*, No. 20-cv-01243, 2022 WL 2133847, at *2 (E.D. Cal. June 14, 2022) (citing *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007)).  *See generally* 4B Adam N. Steinman, *Federal Practice and*

12

*Procedure (Wright & Miller)* § 1137 (4th ed. 2024).  When deciding whether to extend time for service, Rule 4(m) requires a two-step analysis.  "First, upon a showing of good cause for the defective service, the court must extend the time period.  Second, if there is no good cause, the court has the discretion to dismiss without prejudice or to extend the time period."  *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001).

Here, no defendant was served within the ninety-day time period laid out by Rule 4(m).  The original complaint was filed on December 26, 2023, *see* ECF No. 1, meaning the deadline for service was March 25, 2024.  But Quam Properties and the HOA were not served until April 12, 2024, and Cribben was not served until April 15, 2024.  *See* ECF No. 20.

Plaintiff presses for application of the rule's good cause exception.  Counsel for Plaintiff represents that a member of their team, who typically handles service of process, was suffering from health issues, and so another attorney had to fill in.  And they recount the busy schedule of that attorney, as well as that of local counsel.  But counsel fails to explain why they could not even request an extension of their deadline.  And a heavy workload does not constitute good cause under Rule 4(m).  *See Sheehan*, 253 F.3d at 512 (affirming the lower court's conclusion that counsel's busy schedule and seriously ill secretary did not constitute good

13

cause to extend service period).  The Court is therefore not required to extend the service deadline.

Nonetheless, the Court has the discretion to extend the time for service.  In doing so, it "may consider factors like a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service."  *Efaw*, 473 F.3d at 1041 (internal quotation marks omitted).  Several of these factors weigh in favor of an extension here.  Although service was not effectuated until after the ninety-day mark, it has now been effectuated on all of the remaining movant defendants.  Cribben, Quam Properties, and the HOA were served only a few weeks after the original deadline, so they have had actual notice of this suit for some time.  And aside from a conclusory assertion, Defendants do not explain how that brief delay is prejudicial.  *See Leialoha v. IAC-Kaanapali Shores*, Civ. No. 08-518, 2009 WL 3018711, at *3 (D. Haw. Sept. 21, 2009) (extending time for service and contrasting the lack of prejudice resulting from seven-day-late service from the seven-year delay in *Efaw v. Williams*, 473 F.3d 1038, in which the memories of witnesses had faded and one witness was unavailable for trial).

If this action were dismissed without prejudice, Plaintiff would remain free to refile this suit and serve Defendants again.  And, in a few months, this lawsuit would be right back where it is now.  Under these circumstances, it would be unduly wasteful of time and resources to require Plaintiff to file a new complaint

and re-serve Defendants.  Accordingly, the Court exercises its discretion to extend the service deadline under Rule 4(m) and deems Defendants Cribben, Quam Properties, and the HOA timely served.  The Court declines to dismiss these remaining defendants on the grounds of untimely service.

Although the Court denies the motion to dismiss for untimely service, counsel for Plaintiff is cautioned that they should strictly comply with all applicable deadlines moving forward.

## CONCLUSION

For the foregoing reasons, the Court:

(1)  GRANTS Defendants' motion to dismiss for failure to state a claim, insofar as it dismisses Plaintiff Steven Galarza and Defendants Rod Quam, Lysa Tracy, and Michael Deatrick without prejudice; and

(2)  DENIES Defendants' motion to dismiss for failure to timely serve process.

Because some of the parties and claims remain, the FAC—subject to the dismissals described above—is now the operative complaint.  As noted, those dismissals are without prejudice.  Should Plaintiff wish to propose further amendments to the complaint, however, she must first request leave to amend in accordance with the procedures laid out in Federal Rule of Civil Procedure 15 and Local Rule 10.4.

IT IS SO ORDERED.

DATED:  July 31, 2024, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

---

Civil No. 23-00612 MWJS-WRP, *Beverly Galarza and Steven Galarza v. Quam Properties Hawaii, Inc.,* et al.; ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM AND DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO TIMELY SERVE